IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

DOLLY H.,

       Plaintiff,

v.                                  Case No.: 2:22-cv-00573

KILOLO KIJAKAZI,
Acting Commissioner of the
Social Security Administration,

       Defendant.

PROPOSED FINDINGS AND RECOMMENDATIONS

This action seeks a review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. The matter is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and was referred to the undersigned United States Magistrate Judge by standing order for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending are the parties' briefs requesting judgment in their respective favor. (ECF Nos. 6, 7).

The undersigned has fully considered the evidence and the arguments of counsel. For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's motion be **GRANTED** to the extent that it requests remand of the Commissioner's decision, (ECF

No. 6); the Commissioner's motion for judgment on the pleadings be **DENIED**, (ECF No. 7); the decision of the Commissioner be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g); and this case be **DISMISSED**, **with prejudice,** and removed from the docket of the Court.

## I.    <u>Procedural History</u>

In August 2019, Plaintiff Dolly H. ("Claimant") filed for DIB, alleging a disability onset date of June 8, 2019 due to "bilateral leg swelling with pain, possible lymphedem[a]; bilateral carpal tunnel syndrome, left worse; diverticulitis; DVT left calf; left knee swelling with cyst on back of left knee; anxiety; and left middle and index finger numbness." (Tr. at 224-26, 240). The Social Security Administration ("SSA") denied Claimant's application initially and upon reconsideration. (Tr. at 16). Claimant filed a request for an administrative hearing, which was held on February 7, 2022 before the Honorable Valerie A. Bawolek, Administrative Law Judge (the "ALJ"). (Tr. at 50-70). On March 1, 2022, the ALJ issued a written decision, finding that Claimant was not disabled as defined in the Social Security Act. (Tr. at 13-31). The ALJ's decision became the final decision of the Commissioner on October 20, 2022 when the Appeals Council denied Claimant's request for review. (Tr. at 1-7).

Claimant timely filed the present civil action seeking judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 1). The Commissioner subsequently filed a Transcript of the Administrative Proceedings. (ECF No. 3). Thereafter, Claimant filed Plaintiff's Brief, (ECF No. 6), and the Commissioner filed a Brief in Support of Defendant's Decision, (ECF No. 7), to which Claimant filed a reply, (ECF No. 8). Consequently, the matter is fully briefed and ready for resolution.

## II.    Claimant's Background

Claimant was 60 years old on her alleged disability onset date and 62 years old on the date of the ALJ's decision. (Tr. at 86). She has the equivalent of a high school education, communicates in English, and previously worked as a school cook and secretary. (Tr. at 239, 241, 242).

## III.    Summary of the ALJ's Decision

Under 42 U.S.C. § 423(d)(5), a claimant seeking disability benefits has the burden of proving a disability. *See Blalock v. Richardson,* 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a five-step sequential evaluation process for the adjudication of disability claims. If an individual is found "not disabled" at any step of the process, further inquiry is unnecessary, and benefits are denied. 20 C.F.R. § 404.1520. The first step in the sequence is determining whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, then the second step requires a determination of whether the claimant suffers from a severe impairment. *Id.* § 404.1520(c). If severe impairment is present, the third inquiry is whether this impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4 (the "Listing"), found at 20 C.F.R § Pt. 404, Subpt. P, App. 1. *Id.* § 404.1520(d). If the impairment does, then the claimant is found disabled and awarded benefits.

However, if the impairment does not meet or equal a listed impairment, the adjudicator must determine the claimant's residual functional capacity ("RFC"), which

is the measure of the claimant's ability to engage in substantial gainful activity despite the limitations of his or her impairments. *Id.* § 404.1520(e). After making this determination, the fourth step is to ascertain whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(f). If the impairments do prevent the performance of past relevant work, then the claimant has established a *prima facie* case of disability, and the burden shifts to the Commissioner to demonstrate, as the fifth and final step in the process, that the claimant is able to perform other forms of substantial gainful activity, when considering the claimant's remaining physical and mental capacities, age, education, and prior work experiences. 20 C.F.R. § 404.1520(g); *see also McLain v. Schweiker,* 715 F.2d 866, 868-69 (4th Cir. 1983). The Commissioner must establish two things: (1) that the claimant, considering his or her age, education, skills, work experience, and physical shortcomings has the capacity to perform an alternative job, and (2) that this specific job exists in significant numbers in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the SSA "must follow a special technique at each level in the administrative review process," including the review performed by the ALJ. 20 C.F.R. § 404.1520a(a). Under this technique, the ALJ first evaluates the claimant's pertinent signs, symptoms, and laboratory results to determine whether the claimant has a medically determinable mental impairment. *Id.* § 404.1520a(b). If an impairment exists, the ALJ documents such findings. Second, the ALJ rates and documents the degree of functional limitation resulting from the impairment according to criteria specified in 20 C.F.R. § 404.1520a(c). Third, after rating the degree of functional limitation from the claimant's impairment(s), the ALJ

determines the severity of the limitation. *Id.* § 404.1520a(d). A rating of "none" or "mild" in the four functional areas of understanding, remembering, or applying information; (2) interacting with others; (3) maintaining concentration, persistence, or pace; and (4) adapting or managing oneself will result in a finding that the impairment is not severe unless the evidence indicates that there is more than minimal limitation in the claimant's ability to do basic work activities. *Id.* § 404.1520a(d)(1). Fourth, if the claimant's impairment is deemed severe, the ALJ compares the medical findings about the severe impairment and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment meets or is equal to a mental disorder described in the Listing. *Id.* § 404.1520a(d)(2). Finally, if the ALJ finds that the claimant has a severe mental impairment, which neither meets nor equals a listed mental disorder, the ALJ assesses the claimant's residual mental functional capacity. *Id.* § 404.1520a(d)(3). The regulations further specify how the findings and conclusion reached in applying the technique must be documented by the ALJ, stating:

> The decision must show the significant history, including examination and laboratory findings, the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each functional areas described in paragraph (c) of this section.

20 C.F.R. § 404.1520a(e)(4).

Here, the ALJ determined as a preliminary matter that Claimant met the insured status requirements for DIB through March 31, 2024. (Tr. at 18, Finding No. 1). At the first step of the sequential evaluation, the ALJ confirmed that Claimant had not engaged in substantial gainful activity since her alleged onset date. (*Id.*, Finding No. 2). At the second step of the evaluation, the ALJ found that Claimant had the following severe

impairments: osteoarthritis of the bilateral knees with Baker's cyst on the left; bilateral carpal tunnel syndrome with left release; obesity; and diabetes mellitus. (Tr. at 18, Finding No. 3). The ALJ also considered Claimant's laceration of the left index and middle fingers, gastroesophageal reflux disease (GERD), hypertension, fatty liver, hypercholesterolemia, history of deep vein thrombosis (DVT), and generalized anxiety disorder, but the ALJ found that the impairments were non-severe. (Tr. at 19-20).

Under the third inquiry, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled any of the impairments contained in the Listing. (Tr. at 20-22, Finding No. 4). Accordingly, the ALJ found that Claimant possessed:

> [T]he residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except she can lift and/or carry 10 pounds occasionally and less weight frequently. She can sit for six hours in an eight-hour workday; stand for two hours in an eight-hour workday; and walk for one hour in an eight-hour workday. She can occasionally climb ramps and stairs, bend, stoop, and crouch, but she can never climb ladders, ropes, or scaffolds, kneel, or crawl. She can operate hand and foot controls frequently. She must avoid unprotected heights, moving mechanical parts, extremes of temperatures, humidity, and wetness.

(Tr. at 22-25, Finding No. 5).

At the fourth step, the ALJ determined that Claimant could perform her past job as a secretary as the position is generally performed. (Tr. at 25-26, Finding No. 6). Consequently, the ALJ concluded that Claimant was not disabled as defined by the Social Security Act and was not entitled to benefits. (Tr. at 26, Finding No. 7).

## IV.    Claimant's Challenges to the Commissioner's Decision

Claimant asserts two challenges to the Commissioner's decision. First, she argues that the ALJ's step four finding that she could perform her past work as a secretary is "contrary to the law" because the ALJ did not assess any mental RFC restrictions or

explain why limitations were excluded, despite concluding at step two of the sequential evaluation that Claimant had mild limitations in all of the paragraph B categories. (ECF No. 6 at 3-10). According to Claimant, the ALJ's failure to explain her RFC analysis of Claimant's mental functional limitations precludes meaningful review of the decision by this Court. (*Id.* at 5). Claimant contends that the error cannot be considered harmless because the ALJ found that she could return to her past skilled job, which could be impacted by mental limitations. (*Id.* at 8). In her second assignment of error, Claimant argues that the ALJ's analysis of her subjective symptoms was flawed because the ALJ did not evaluate her mental impairments or her "stellar" work history. (*Id.* at 10-11).

In response, the Commissioner argues that substantial evidence supports the ALJ's finding that Claimant could perform skilled work despite her mild mental limitations, and the ALJ was not required to afford greater credence to Claimant's subjective complaints based on her work history. (ECF No. 7 at 10-16). Claimant's reply to the Commissioner's response reiterates that the Court can only speculate as to why the ALJ found that she could still perform skilled work despite her mild mental limitations because the ALJ did not articulate any consideration of her mental limitations beyond step two of the sequential evaluation. (ECF No. 8 at 1-2).

## V.    <u>Relevant Medical History</u>

The undersigned reviewed all of the evidence before the Court. The evidence that is most relevant to the instant matter is summarized as follows.

### *A. Treatment Records*

Claimant's primary care provider prescribed Zoloft to treat generalized anxiety disorder, as noted in records dated May 9, 2018 and February 17, 2019. (Tr. at 397, 427). On July 6, 2020, the record reflected that Claimant's anxiety was successfully treated

with Zoloft. (Tr. at 483). She continued taking the medication on September 4, 2020 and December 4, 2020. (Tr. at 519, 523). On March 19, June 30, and October 8, 2021, Claimant's primary care provider recorded that her generalized anxiety disorder was stable and again renewed her prescription for Zoloft. (Tr. at 541, 573, 579).

### B. Opinions, Evaluations, and Prior Administrative Findings

On July 29, 2020, Kelly Robinson, M.A., performed a consultative psychological examination of Claimant. Claimant reported symptoms of nervousness, agitation, restlessness, and trouble concentrating. (Tr. at 499). Claimant explained that she had the symptoms for two years, but they improved over time. (*Id.*). Claimant further related that her family physician prescribed Zoloft, and she was resultantly calmer, did not let things bother her as much, and had more patience. (*Id.*). She denied any history of specialized mental health treatment. (Tr. at 500). Claimant's most recent employment was as a school cook for four years. (*Id.*). She quit that job in 2019 due to issues with her hands and "being on [her] feet." (*Id.*). She was previously employed as an office worker. (*Id.*). Claimant's mental status examination findings were normal. (Tr. at 501-02).

On August 1, 2020, Debra Lilly, Ph.D., performed a Psychiatric Review Technique, assessing that Claimant had mild limitation in understanding, remembering, and applying information; interacting with others; and maintaining concentration, persistence, or pace, but she had no limitation in adapting or managing herself. (Tr. at 78). Dr. Lilly concluded that Claimant's anxiety was non-severe. (Tr. at 79). Jeff Harlow, Ph.D., affirmed these findings on October 17, 2020. (Tr. at 94-95).

On February 7, 2022, independent medical expert, Gary Bennett, M.D., testified during Claimant's administrative hearing that Claimant was treated for anxiety at Family Health Care. (Tr. at 65). She was on a "fairly decent dosage" of Zoloft, which was

8

reportedly helping. (Tr. at 65-66). Dr. Bennett opined that Claimant's anxiety was non-severe, noting that he did not see anything indicating greater than mild limitations in the paragraph B criteria. (Tr. at 66).

### C. Claimant's Statements

Claimant completed an Adult Function Report on September 13, 2020. She listed that she did light housework, cooked dinner, watched television, visited with family, and attended church. (Tr. at 288, 291). She stated that she needed reminders to take her medicine and go places, but she did not go out often. (Tr. at 289, 291). Claimant also documented that her conditions affected her ability to complete tasks, concentrate, and occasionally understand. (Tr. at 292). She noted that she could pay attention for 15 minutes, did not handle stress well, and had to read written instructions a few times, but she followed spoken instructions "ok" and got along with authority figures "good." (Tr. at 292-93).

### VI.    Scope of Review

The issue before the Court is whether the final decision of the Commissioner is based upon an appropriate application of the law and is supported by substantial evidence. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In Blalock v. Richardson, the Fourth Circuit Court of Appeals defined "substantial evidence" to be:

> [E]vidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

483 F.2d 773, 776 (4th Cir. 1973) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). When examining the Commissioner's decision, the Court does not conduct a *de novo* review of the evidence to ascertain whether the claimant is disabled. *Johnson*

*v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Instead, the Court's role is limited to insuring that the ALJ followed applicable Regulations and Rulings in reaching his or her decision, and that the decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." *Blalock*, 483 F.2d at 775.

## VII.  Discussion

Claimant's challenges to the Commissioner's decision concern the ALJ's analysis of her mental RFC limitations and subjective symptoms.

### A. Mental RFC

Claimant argues that the ALJ's RFC analysis and decision preclude meaningful review because they lack any discussion of how the mild limitations associated with her non-severe mental impairment affect her ability to do work-related activities. The ALJ found that Claimant had the medically determinable mental impairment of generalized anxiety disorder. While this impairment was non-severe, it caused limitations in all four functional areas assessed at step three of the sequential evaluation.[1]

SSR 96-8p provides guidance on how to properly assess a claimant's RFC, which is the claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1. RFC is a measurement of the ***most*** that a claimant can do despite his or her limitations

---

[1] The four functional areas are found at 20 C.F.R. § 404.1520a(c)(3), as well as under 12.06, paragraph B, of the Listing, which addresses anxiety and obsessive-compulsive disorders. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, at 12.06. These four functional areas, also called "paragraph B criteria," represent the areas of mental functioning a person uses in a work setting. As previously indicated, the criteria are: "understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." *Id.*

resulting from both severe and non-severe impairments, and the finding is used at steps four and five of the sequential evaluation to determine whether a claimant can still do past relevant work and, if not, whether there is other work that the claimant is capable of performing. *Id.* The ALJ's RFC determination requires "a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* at \*3. The functions which the ALJ must assess include a claimant's physical abilities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching); mental abilities, such as understanding, remembering, and carrying out instructions and responding appropriately to supervision, coworkers, and work pressures in a work setting; and other abilities, such as seeing and hearing. 20 CFR § 404.1545(b)-(d).

Only by examining specific functional abilities can the ALJ determine (1) whether a claimant can perform past relevant work as it was actually, or is generally, performed; (2) what exertional level is appropriate for the claimant; and (3) whether the claimant "is capable of doing the full range of work contemplated by the exertional level." SSR 96-8p, 1996 WL 374184, at \*3. Indeed, "[w]ithout a careful consideration of an individual's functional capacities to support an RFC assessment based on an exertional category, the adjudicator may either overlook limitations or restrictions that would narrow the ranges and types of work an individual may be able to do, or find that the individual has limitations or restrictions that he or she does not actually have." *Id.* at \*4. In determining a claimant's RFC, the ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* at \*7. Further, the ALJ

must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." *Id.* at *7. While an ALJ is not required to explicitly discuss "irrelevant or uncontested" functions, "[r]emand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)) (markings omitted).

For example, in *Mascio,* the ALJ found that the claimant had moderate limitations in concentration, persistence, and pace, but failed to adequately account for those deficits in the RFC analysis and hypothetical questions posed to the vocational expert. *Id.* at 637-38. The Fourth Circuit held that, in the absence of a logical discussion by the ALJ of how claimant's mental deficits translated into work-related functional limitations—or how not—the reviewing court was precluded from conducting a meaningful review of the RFC finding and thus prevented from determining whether the disability decision was supported by substantial evidence. *Id.* at 638. Although *Mascio* specifically involved moderate limitations associated with a severe mental impairment, the ALJ's duty to consider the effects on a claimant's RFC of mild limitations associated with a non-severe impairment is explicitly required by SSR 96-8p:

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim. For example, in combination with limitations imposed by an individual's other impairments, the limitations due to such a "not severe" impairment may prevent an individual from performing past relevant work or may narrow the range of other work that the individual may still be able to do.

SSR 96-8p, 1996 WL 374184, at *5.

Since *Mascio,* courts in this circuit have not agreed on whether an ALJ's failure to discuss in the RFC analysis the work-related effects of mild limitations in paragraph B criteria automatically mandates remand. *See, e.g., Williams v. Comm'r of Soc. Sec.*, No. 5:22-CV-00128-DSC, 2023 WL 1931351, at *3 (W.D.N.C. Feb. 10, 2023) ("Here, the ALJ failed to address whether Plaintiff's mild mental limitations resulted in any functional limitations. While the ALJ may have found that Plaintiff's mild mental health impairments do not result in any functional limitations, his failure to explain that finding requires remand."); *Monica E. v. Kijakazi*, No. CV BPG-21-1825, 2022 WL 965691, at *2 (D. Md. Mar. 30, 2022) (holding that ALJ erred by failing to consider whether claimant's non-severe mental impairments, with mild limitations in all four functional areas, affected her ability to perform basic work activities; thus, remand was warranted.); *Anderson v. Kijakazi*, No. 2:20-CV-3237-MBS, 2022 WL 391549, at *5 (D.S.C. Feb. 9, 2022) ("On the facts presented here, the court finds that the ALJ erred when he omitted from his RFC assessment a limitation that reflects his finding of Plaintiff's mild mental impairments *and* failed to state why any such limitation is not necessary."); *Long v. Kijakazi,* No. 1:20-CV-201, 2021 WL 6618725, at *11 (N.D.W. Va. Dec. 28, 2021) (holding that ALJ's failure to evaluate the effect of Plaintiff's mild mental limitations on her ability to perform the relevant functions of her past skilled work frustrated meaningful review and required remand); *McMichael v. Colvin,* No. 1:15CV528, 2016 WL 4556768, at *3-4 (M.D.N.C. Aug. 31, 2016); *But see Kimberly B. C. v. Kijakazi*, No. 1:22CV617, 2023 WL 4974033, at *5 (M.D.N.C. Aug. 3, 2023) (collecting cases that find no general requirement under *Mascio* to remand for lack of discussion regarding mild mental limitations in RFC); *Britt v. Saul,* 860 Fed. Appx. 256, 262 (4th

Cir. 2021) (broadly suggesting that absence of discussion at step 4 of limitations associated with a non-severe impairment may not require remand when "[t]he discussion in step-two that these limitations had a minimal impact on vocation and were being managed tells us what impact these limitations had in the residual-functional-capacity analysis."). While these decisions approach the issue from slightly different perspectives, one common thread throughout all of them is that remand is required when the ALJ's decision, taken as a whole, is insufficient to allow for meaningful review, or fails to build "an accurate and logical bridge from the evidence to [the] conclusion," or both. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (citation omitted).

Here, the ALJ evaluated the severity of Claimant's generalized anxiety disorder at step two of the sequential evaluation. (Tr. at 19). The ALJ found that Claimant had mild limitations in all four functional areas. The ALJ concluded that these limitations had only a "minimal" effect on Claimant's ability to do basic work activities, rendering the mental impairment non-severe. (Tr. at 19-20). Nevertheless, the ALJ acknowledged that the step two analysis was a severity rating only, and not an RFC assessment, which required a more detailed evaluation. (*Id.* at 20). Yet, despite recognizing the difference between the two steps, the ALJ did not discuss, or even mention, Claimant's mental impairment, symptoms, or limitations at any subsequent steps of the sequential evaluation. The RFC discussion focused exclusively on Claimant's physical impairments.

The ALJ found that Claimant could perform the demands of her past skilled job, without any articulated intermediate analysis to explain how she could meet the demands of that job despite her severe ***and*** non-severe impairments. Of course, it was in the purview of the ALJ to determine whether the combination of severe and non-severe impairments required additional limitations to Plaintiff's RFC, and the

14

accompanying hypothetical questions to the vocational expert. However, given the nature of Plaintiff's past skilled employment as a secretary, the record is not so one-sided that the Court can affirm the Commissioner's decision without improperly filling in the blanks for the ALJ. The boilerplate statements that the ALJ considered the functional limitations resulting from Claimant's non-severe impairments in determining Claimant's RFC and that the RFC assessment reflects the degree of limitation that the ALJ found in the paragraph B mental function analysis do not provide any substantive information or the level of articulation necessary for meaningful review. (Tr. at 19, 20).

Claimant was diagnosed and treated for generalized anxiety disorder throughout the relevant period. (Tr. at 427, 483, 519, 523, 541, 573, 579). While she reported that Zoloft improved her symptoms and her mental status examination findings were normal during her consultative examination in July 2020, she stated in September 2020 that she had a limited ability to complete tasks, concentrate, and sometimes understand. (Tr. at 292, 501-02). Claimant reported that she could only pay attention for 15 minutes, did not handle stress well, and had to read written instructions several times. (Tr. at 292-93). The ALJ commented on Claimant's limited interactions with others, her concerns regarding a shortened attention span and with following instructions, and noted that an independent medical expert, as well as state psychology consultants, agreed that Claimant had generalized anxiety. (Tr. at 19-20). However, the ALJ only discussed this evidence in relation to the severity of Claimant's anxiety. (*Id.*). The ALJ never addressed how Claimant's anxiety might affect her ability to do the basic work-related activities required of her prior relevant work.

Moreover, nothing in the record, even when taken as a whole, clarifies the ALJ's findings. The ALJ determined that the opinion evidence was persuasive regarding the severity of Claimant's anxiety, but this does not provide the necessary insight into the RFC conclusion. The experts did not render any opinions as to whether Claimant had mental RFC limitations, and the ALJ did not articulate that their opinions factored into the RFC finding in any manner. While the ALJ explained that Claimant did not have more than mild mental limitations, she nonetheless concluded that Claimant had *some* limitation in all of the broad functional areas. (Tr. at 19-20). In fact, the ALJ found that Claimant was more limited than the state agency psychologists whose findings the ALJ found persuasive. The psychologists opined that Claimant had no limitation in adapting or managing herself, whereas the ALJ found that Claimant was mildly limited. (Tr. at 20, 78, 94). The evidence and the ALJ's findings clearly warranted discussion of Claimant's mental RFC; particularly, given the type of work the ALJ found Claimant capable of performing.

At the fourth step of the sequential evaluation, the ALJ found that Claimant was capable of performing her past relevant work as a secretary, which is a skilled job with a specific vocational preparation of 6. (Tr. at 25). The ALJ indicated that Claimant could perform that job, not as she had performed it in the past necessarily, but as it is generally performed. (Tr. at 26). The VE testified that the applicable job position was identified as secretary (clerical), Dictionary of Occupational Titles ("DOT") Code 201.362-030. The DOT describes a variety of tasks performed by secretaries, including scheduling appointments, providing information to callers, filing, preparing correspondence, answering telephones, routing calls, greeting visitors, compiling reports, preparing mail, transcribing, and recording staff minutes. In addition to the DOT, the SSA may consider

and take notice of other reliable job information available from various governmental publications, such as the Occupational Information Network (O*NET), which is a database containing information on hundreds of standardized and job-specific descriptors for occupations, whose data collection is sponsored by the Department of Labor and the Employment and Training Administration. *Watson v. Kijakazi*, No. 4:20-CV-1144 PLC, 2023 WL 1815670, at *4 (E.D. Mo. Feb. 8, 2023) (citations and markings omitted). Although the O*NET is not relied upon in the same manner as the DOT, it has become a valuable resource to the SSA. *See Webb v. Berryhill*, No. 1:17CV341, 2018 WL 2198829, at *6 (M.D.N.C. May 14, 2018).

The O*NET analyzes individual occupations, and in relevant part, ranks by order of importance skills, abilities, and work activities required by each listed occupation. In regard to the DOT title 201.362-030, the O*NET ranks the most important skills required by general secretaries to include active listening to what others are saying, asking appropriate questions, and adjusting actions in relation to others' actions; the most important abilities required to include the ability to communicate information and ideas in speaking so others will understand, the ability to listen and understand ideas and information spoken by others, and the ability to understand information and ideas presented in writing; the most important work activities required to include communicating with people outside the organization and exchanging information, providing information to others within the organization, interacting with computers, processing information, and establishing relationships. *See* O*NET Code 55108 at https://occupationalinfo.org/onet/. All of these skills, abilities, and work activities could be affected by even minimal limitations in the paragraph B criteria.

Furthermore, Claimant identified some specific limitations in key functioning areas, including her ability to interact with others and her ability to pay attention and concentrate, complete tasks, and understand instructions. (Tr. at 292). Because these functions are integral to performing the occupation of secretary, without a narrative explanation that addresses and reconciles the evidence regarding Claimant's limitations related to her non-severe mental impairment and then logically creates a bridge to the RFC finding, the court cannot meaningfully review the ALJ's decision. *Key v. Kijakazi*, No. 5:23-CV-00011-MOC, 2023 WL 4904252, at *6 (W.D.N.C. Aug. 1, 2023) (holding that the ALJ failed to build a logical bridge from the evidence to the RFC finding when the ALJ determined that Claimant had mild limitations due to a non-severe mental impairment but did not analyze their impact, if any, on her ability to perform basic work activities); *Michelle A. v. Kijakazi*, No. CV 21-1200-BAH, 2022 WL 2918143, at *4 (D. Md. July 25, 2022); *Cf. Hunt v. Kijakazi*, No. 1:21-CV-00265, 2021 WL 9076248, at *9-10 (S.D.W. Va. Dec. 9, 2021), *report and recommendation adopted,* 2022 WL 2719968 (S.D.W. Va. July 13, 2022) (affirming where the ALJ explained why the claimant's mild mental limitations did not restrict his ability to perform work-related functions) and *Teresa S. v. Kijakazi*, No. 2:22-CV-00394, 2023 WL 3963836, at *10 (S.D.W. Va. Apr. 26, 2023), *report and recommendation adopted,* 2023 WL 3952371 (S.D.W. Va. June 12, 2023).

As noted by Claimant, the error cannot be considered harmless given the fact that the ALJ determined that Claimant could return to her past skilled work without any analysis of whether she can fulfill the mental demands of that job. For that reason, the undersigned **FINDS** that the ALJ's RFC analysis is not supported by substantial evidence. Accordingly, the undersigned **RECOMMENDS** that the Commissioner's

decision be **REVERSED** and that this case be **REMANDED** so that the ALJ may reexamine or elaborate upon her analysis of Claimant's mental functional abilities and RFC finding.

### B. Subjective Symptoms

Claimant argues that the ALJ's credibility assessment is deficient because the ALJ did not consider her mental impairments or her virtually uninterrupted 25-year work history. (ECF No. 6 at 10). Under the applicable Social Security rulings and regulations, an ALJ is obliged to use a two-step process when evaluating the credibility of a claimant's subjective statements regarding the effects of his or her symptoms. 20 C.F.R. § 404.1529 (effective March 27, 2017). First, the ALJ must consider whether the claimant's medically determinable medical and psychological conditions could reasonably be expected to produce the claimant's symptoms, including pain. *Id.* § 404.1529(a). In other words, "an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability." Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *2 (effective March 16, 2016). Instead, evidence of objective "[m]edical signs and laboratory findings, established by medically acceptable clinical or laboratory diagnostic techniques" must be present in the record and must demonstrate "the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." 20 C.F.R. § 404.1529(b).

Second, after establishing that the claimant's conditions could be expected to produce the alleged symptoms, the ALJ must evaluate the intensity, persistence, and severity of the symptoms to determine the extent to which they prevent the claimant from performing basic work activities. *Id.* § 404.1529(a). If the intensity, persistence, or

severity of the symptoms cannot be established by objective medical evidence, the ALJ must consider "other evidence in the record in reaching a conclusion about the intensity, persistence, and limiting effects of an individual's symptoms," including a claimant's own statements. SSR 16-3p, 2016 WL 1119029, at *5-*6. In evaluating a claimant's statements regarding his or her symptoms, the ALJ must consider "all of the relevant evidence," including: the claimant's history; objective medical findings obtained from medically acceptable clinical and laboratory diagnostic techniques; statements from the claimant, treating sources, and non-treating sources; and any other evidence relevant to the claimant's symptoms, such as, evidence of the claimant's daily activities, specific descriptions of symptoms (location, duration, frequency and intensity), precipitating and aggravating factors, medication or medical treatment and resulting side effects received to alleviate symptoms, and other factors relating to functional limitations and restrictions due to the claimant's symptoms. 20 C.F.R. § 404.1529(c)(1)-(3); *see also Craig*, 76 F.3d at 595; SSR 16-3p, 2016 WL 1119029, at *4-*7.

SSR 16-3p provides further instruction on what type of evidence should be considered when the intensity, persistence, or severity of the symptoms cannot be established by objective medical evidence. SSR 16-3p, 2016 WL 1119029, at *6. The ruling presents an extensive list of evidence that may prove probative and notes that valuable evidence to consider may include (1) a longitudinal record of any treatment and its success or failure, including any side effects of medication and (2) indications of other impairments, such as potential mental impairments, that could account for an individual's allegations. *Id.*

In *Hines v. Barnhart*, the Fourth Circuit stated that:

20

> Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers.

453 F.3d at 565 n.3 (citing *Craig*, 76 F.3d at 595). The ALJ may not reject a claimant's allegations of intensity and persistence solely because the available objective medical evidence does not substantiate the allegations; however, the lack of objective medical evidence may be one factor considered by the ALJ. SSR 16-3p, 2016 WL 1119029, at *5.

Ultimately, "it is not sufficient for [an ALJ] to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.' It is also not enough for [an ALJ] simply to recite the factors described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the [ALJ] evaluated the individual's symptoms." *Id.* at *9. SSR 16-3p instructs that "[t]he focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person;" rather, the core of an ALJ's inquiry is "whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities." *Id.* at *10.

When considering whether an ALJ's evaluation of a claimant's reported

symptoms is supported by substantial evidence, the Court does not replace its own assessment for those of the ALJ; rather, the Court scrutinizes the evidence to determine if it is sufficient to support the ALJ's conclusions. In reviewing the record for substantial evidence, the Court does not re-weigh conflicting evidence, reach independent determinations as to the weight to be afforded to a claimant's report of symptoms, or substitute its own judgment for that of the Commissioner. *Hays*, 907 F.2d at 1456. Because the ALJ had the "opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984).

In this case, the ALJ performed the two-step process concerning Claimant's physical impairments. The fact that the ALJ did not specifically mention Claimant's "stellar work history" in itself does not warrant remand of the ALJ's decision because the ALJ explicitly considered the "totality of the evidence." (Tr. at 25). Claimant's work history was well documented in the record, including in Claimant's work history report, earnings records, disability report, and the vocational background section of the consultative psychologist's report. (Tr. at 227-29, 242, 261, 500). Claimant does not identify any authority which required the ALJ to elaborate on her work history any further.

However, the subjective symptom analysis is deficient because the ALJ did not analyze Claimant's mental impairment. The ALJ did not identify whether Claimant's medically determinable generalized anxiety disorder could reasonably be expected to produce her symptoms, and, if so, evaluate the intensity, persistence, and severity of the symptoms to determine the extent to which they prevent her from performing basic work activities. 20 C.F.R. § 404.1529; ("SSR") 16-3p, 2016 WL 1119029. Without this

information, the Court cannot meaningfully review the decision.

Therefore, the undersigned **FINDS** that the ALJ's subjective symptom analysis is not supported by substantial evidence. Accordingly, the undersigned **RECOMMENDS** that the Commissioner's decision be **REVERSED,** and the case be **REMANDED** for this additional reason so that the ALJ may reexamine or elaborate upon the subjective symptom analysis of Claimant's mental impairment.

## VIII.  <u>Recommendations for Disposition</u>

For the above reasons, the undersigned United States Magistrate Judge respectfully **PROPOSES** that the presiding District Judge confirm and accept the findings herein and **RECOMMENDS** that the District Judge **GRANT** Plaintiff's motion to the extent that it requests remand of the Commissioner's decision, (ECF No. 6); **DENY** Defendant's request to affirm the decision of the Commissioner, (ECF No. 7); and **DISMISS** this action from the docket of the Court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made, and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de*

*novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Copenhaver, and Magistrate Judge Eifert.

The Clerk is directed to file this "Proposed Findings and Recommendations" and to provide a copy of the same to counsel of record.

**FILED:** August 31, 2023

Cheryl A. Eifert
United States Magistrate Judge